Jay Brodsky
240 East Shore Road, #444
Great Neck, NY 11023
Telephone: (973) 568-1666
E-mail: demcointerexport@yahoo.com
Plaintiff ProSe on Behalf of Himself                          Case No._____

# UNITED STATE DISTRICT COURT
## DISTRICT OF UTAH

**THE MATTER OF:**

**JAY BRODSKY**
**PLAINTIFF**

*-against-*

**Issues Before the Court:**

- Telephone Consumer Protection Act 1991(TCPA)
- 47 U.S.C.A. § 227 et seq.,
- Sections 5(a), 5(m)(1)(A), and 16(a) of the FTC Act
- 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b)
- Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act)
- 15 U.S.C. § 6105
- Section 5(a) of the FTC Act, 15 U.S.C. § 45(a)
- FTC Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. Part 310
- Truth in Caller ID Act of 2009
- 76-10-1802 (2), Utah Code Annotated 1953
- Anti Spoofing Act 2017 NYS Bill S434

CREEDENCE RESOURCES
MANAGEMENT, LLC.
KAREN NEGI
DOES 1 through 5
**DEFENDANT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# SUMMONS & COMPLAINT

## I.       INTRODUCTION

1.   On this 1st day of May, 2019, Jay Brodsky (PLAINTIFF) resides at
     240 East Shore Road, Apartment 444, Great Neck, New York 11023
     duly deposes that the facts as stated herein are true to the best of his
     knowledge.

## II.      <u>VENUE AND JURISTICTION</u>

2.   Venue is appropriate under 28 U.S.C.A. § 1332 because, among other things:

     JAY BRODSKY, hereafter known as, 'PLAINTIFF' is a resident of New

     York State, County of Nassau; CREDENCE RESOURCE MANAGEMENT,

     LLC., hereafter known as, "CREDENCE," conducts business from their

     United States headquarters at, 17000 Dallas Pkwy, Suite 204, Dallas, TX

     75248; directing their activities to residents of New York State, County of

     Nassau and to others similarly situated nationwide; a Utah corporation,

     registered agent, "Corporation Service Company," 15 West South Temple,

     Suite 1701, Salt Lake City, UT 84101.

3.   Under the Federal Rules of Civil Procedure Rule 8 (Fed. R. Civ. P.

     80), Plaintiff, hereby makes it known too, 'CREDENCE'; 'KARAN NEGI'

     hereafter known as 'NEGI' and Does' 1 through 5, that Plaintiff files this

complaint at the United States District Court for the District Utah for

reasons stated herein.

4.    The Federal courts' jurisdiction is limited, and Federal courts generally may

only hear a case if it involves a question of Federal law or where diversity of

citizenship exists between the parties and the amount in controversy exceeds

the jurisdictional minimum. See 28 U.S.C. §§ 1331, 1332.  Federal question

jurisdiction exists in all civil actions arising under the Constitution, laws, or

treaties of the United States. 28 U.S.C. § 1331. A claim 'arises under'

federal law when the federal question is presented on the face of the

plaintiff's well-pleaded complaint. Aetna Health Inc. v. Davila, 542 U.S.

200, 207 (2004). The party asserting jurisdiction carries the burden of

establishing subject matter jurisdiction. Volvo Trucks N. Am., Inc. v.

Crescent Ford Truck Sales, Inc., 666 F.3d 932, 935 (5th Cir. 2012).

5.    This Utah District Court enjoys venue under 28 U.S.C. § 1391(a)(2) because

all or a substantial portion of the events that gave rise to Plaintiff's claims

transpired in this courts jurisdiction, including violations of the, Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

6.   Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of

     the Federal Rules of Civil Procedure.

7.   The Plaintiff brings this putative action against the Defendants to secure

     redress for their violations of the, Telephone Consumer Protection Act, 47

     U.S.C. § 227 ("TCPA").

8.   Plaintiff is one of many phone call recipients, believed to number in the

     thousands, who received illegal debt collection calls from 'CREDENCE'.

9.   Plaintiff brings this action to enforce the consumer privacy provisions

     of the TCPA and achieve redress and compensation for himself as a victim of

     Defendants illegal collection practices. In a case such as this, where

     individual damages are set by statute at $500-$1,500 per violation, the

     inclusion of punitive damages are best if not the only means of obtaining

     redress for the type of wide-scale, illegal telemarketing at issue, and is

     consistent both with the private right of action afforded to the aforesaid

     Plaintiff.

10.  In this case however, the Defendants not only routinely used an, "Automatic

     Telephone Dialing System" (ATDS), as was directed towards Plaintiff on

     numerous occasions by agents associated with "CREDENCE" they also

used a, "FICTITIOUS" or "SPOOFED" caller ID, which is illegal.  Spoofed

calls are typically "Redirected," meaning the caller ID being displayed

originated from somewhere other than its actual location.  This is done in an

attempt to lull telephone call recipients into believing a call originated from

a neighbor or someone residing close by.  The Defendants illegally

implemented the use of, "SPOOFED," or "FICTITIOUS," caller ID's in

consonance to, "The Truth in Caller ID Act of 2009, Anti Spoofing Act 2017,

76-10-1802, Utah Code Annotated 1953 and NYS Senate Bill S434.

### III.      THE TRUTH IN CALLER ID ACT OF 2009,
### 111 P.L. 331, 124 Stat. 3572
### Prohibition on Provision of Inaccurate Caller Identification Information

11.      (a) In general-- It shall be unlawful for any person within the United

States, in connection with any telecommunications service or IP-enabled

voice service, to cause any caller identification service to knowingly transmit

misleading or inaccurate caller identification information with the intent to

defraud, cause harm, or wrongfully obtain anything of value, unless such

transmission is exempted pursuant to paragraph (3)(B).

**(b) In general.--**Any person that is determined by the Commission, in

accordance with paragraphs (3) and (4) of section 503(b), to have violated

this subsection shall be liable to the United States for a forfeiture penalty. A

forfeiture penalty under this paragraph shall be in addition to any other

penalty provided for by this Act. The amount of the forfeiture penalty

determined under this paragraph shall not exceed $10,000 for each

violation, or 3 times that amount for each day of a continuing violation,

except that the amount assessed for any continuing violation shall not exceed

a total of $1,000,000 for any single act or failure to act.

## IV.   <u>76-10-1802 (2) - MISREPRESENTATION OF CALL OR TEXT COMMUNICATION IDENTIFICATION</u>

12.   (2) It is unlawful for any person or individual, in connection with any

telecommunications service or VoIP voice service, to knowingly cause any

caller identification service or text message service to transmit false,

misleading, or inaccurate caller or text message identification information

with the intent to harm the recipient of the call or text message.

## V.   <u>NEW YORK STATE SENATE BILL S434</u>

13.   Section one amends the general business law by adding a new section

399-ppp. Subdivision I of section 399-ppp provides that it shall be unlawful

for any business entity, in connection with any telecommunications service

or VoIP service, to cause any caller identification service to transmit false

caller identification information when making a call to any person within the

state with the intent to defraud or harass.

14. 'KARAN NEGI,' as Chief Executive Officer of a Utah Corporation, is

personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C.

§ 217 of the Telephone Consumer Protection Act, which states;

> *The act, omission, or failure of any officer, agent, or*
>
> *other person acting for or employed by any common*
>
> *carrier or user, acting within the scope of his/her*
>
> *employment, shall in every case be also deemed to be the*
>
> *act, omission, or failure of such carrier or user as well as*
>
> *of that person, 47 U.S.C. § 217 (emphasis added).*

Texas v. American Blastfax, Inc., 164 F.Supp.2d 892, 899 (W.D. Tex. 2001)

("American Blastfax"); Sandusky Wellness Center, LLC v. Wagner

Wellness, Inc., 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014);

Maryland v. Universal Elections, 787 F.Supp.2d 408, 415-16 (D.Md. 2011)

("Universal Elections"); Baltimore-Washington Tel Co. v. Hot Leads Co.,

584 F.Supp.2d 736, 745 (D.Md. 2008); Covington & Burling v. Int'l Mktg.

& Research, Inc., 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003);

Chapman v. Wagener Equities, Inc. 2014 WL 540250, at *16-17 (N.D.Ill.

Feb. 11, 2014); Versteeg v. Bennett, Deloney & Noyes, P.C., 775 F.Supp.2d

1316, 1321 (D.Wy.2011) ("Versteeg")

## VI.              THE PARTIES:

### PLAINTIFF:

15.   JAY BRODSKY, 240 East Shore Road, Apt. 444, Great Neck, New York

11023;

### DEFENDANTS:

16.   CREDENCE RESOURCE MANAGEMENT, LLC., 17000 Dallas Pkwy,

Suite 204, Dallas, TX 75248;

17.   KARAN NEGI, 17000 Dallas Pkwy, Suite 204, Dallas, TX 75248;

18.   DOES' 1 THROUGH 5, Plaintiff is presently unable to confirm which of

'CREDENCEs' wholly owned subsidiaries and/or affiliated companies;

DOES' 1 through 5 are liable for the claims asserted herein. Discovery will

allow Plaintiff to proceed with naming additional, 'CREDENCE,' affiliated

and owned companies. Other persons identities included in DOES' 1 through

5, whose identities are unknown to Plaintiff participated in the events

alleged herein which give rise to the claims asserted by Plaintiff.;

19.    At all times material to this complaint, 'KARAN NEGI,' is known to have

       controlled in fact, and was/is a corporate officer of, 'CREDENCE' and  to

       the best of Plaintiffs knowledge, personally directed their telemarketing

       practices as Chief Executive Officer.

20.    At all times material to this complaint, 'DEFENDANTS' conducted their

       daily operations from a main business address in DALLAS, TEXAS, as well

       as others in San Jose, California; Mumbai, India; Bellevue, Washington and

       Pune, India; using the same equipment and same employees, and held

       themselves out to the public under the business name, 'CREDENCE

       RESOURCE MANAGEMENT.'

## VII.    THE TELEPHONE CONSUMER PROTECTION ACT

21.    In 1991, Congress enacted the, "TCPA" to regulate the explosive growth of

       the telemarketing industry which today is believed to have put forth nearly,

       SIXTY BILLION (60,000,000,000) illegal telemarketing calls (according to

       [F]TC statistics) to consumers over the past few years of which are expected

to grow exponentially if something isn't done to stop them. In so doing,

Congress recognized that "unrestricted telemarketing . . . can be an intrusive

invasion of privacy with 5-10% of those illegal calls resulting in recipients

of these calls being scammed out of, Thousands of Dollars each thereby

making these calls [1]costly and dangerous to the well being of mostly senior

citizens who are more vulnerable to these types of calls. The, "Telephone

Consumer Protection Act of 1991," Pub. L. No. 102-243, 105 Stat. 2394

(1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of

the Communications Act of 1934, 47 U.S.C. § 201 et seq.

22.    The TCPA's most severe restrictions address telemarketing calls put forth to

residential and cellular telephone lines. In enacting the statute, Congress

stated that banning these calls was/is "the only effective means of protecting

telephone consumers from this nuisance and privacy invasion." Id. § 2(10)

and (12); see also Mims, 132 S. Ct. at 745.

---

[1] By **TRACEY KAPLAN** | tkaplan@bayareanewsgroup.com | Bay Area News Group
PUBLISHED: July 8, 2018 at 9:00 am | UPDATED: July 10, 2018 at 5:25 am

They boldly prey on the elderly and other vulnerable groups like immigrants and
small businesses by impersonating a variety of agencies, from the IRS to
student-loan collectors. In the latest shakedown, immigrants in New York City
reported being swindled out of millions of dollars by Mandarin-speaking
scammers pretending to be from the Chinese consulate and demanding money
to protect victims' U.S. legal status.

23. Accordingly, the TCPA prohibits persons/companies from initiating debt

collection calls to residential telephone lines and cell phones using a

prerecorded voice messaging or by using an, "Automatic Telephone Dialing

System," commonly referred to as, "ATDS," to call and deliver messages

without the prior express consent of the called party pursuant to, 47 U.S.C. §

227(b). Especially prohibited is the use of, "<u>SPOOFED</u>," caller ID's as

stated herein.

24. For autodialed telemarketing or collection calls made to cellular telephones

and landlines prior to October 16, 2013, the telemarketer must show they

had a consumer's prior expressed written consent to call via pre-recorded or

auto dialed messages.

25. For autodialed telemarketing calls made to cellular telephones and landlines

on or after October 16, 2013, the telemarketer must show prior expressed

written consent (a) bearing the signature of the person who is/was being

dialed and thereby providing consent; (b) written consent must specify the

telephone number to which the person consenting is to be called; (c) it

must show clearly that it authorizes the company to call the person being

dialed by use of an autodialer or prerecorded message for debt collection

purposes; and (d) providing consent is not a condition of purchasing goods

or services. See In re Rules & Regs.

### VIII        IMPLEMENTING THE TCPA
### 27 FCC Rcd 1830, 1844 ¶ 33 (2012)

26.    For calls dialed on or after October 16, 2013, having an established business

relationship exemption is no longer applicable.

27.    On May 9, 2013, the [F]CC released a Declaratory Ruling holding that a,

Corporation, or other entity that contracts out its telephone marketing "may

be held vicariously liable under federal common law principles of agency for

violations of . . . section 227(b) . . . that are committed by third-party

telemarketers."

28.    More specifically, the [F]CC 2013 Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the

telemarketer, a seller is liable for telemarketing calls if the telemarketer "has

apparent (if not actual) authority" to make the calls. [F]CC 2013 Ruling, 28

[F]CC Rcd at 6586 ¶ 34.

29.    The [F]CC has rejected a narrow view of TCPA liability, including the

assertion that a seller's liability requires a finding of formal agency and

immediate direction and control over the third-party who placed the debt

collection call.

30.    Under the TCPA, a seller of a product or debt collector may vicariously be

       liable for a third-party marketer's violations of Section 227(b), even if the

       seller/collector did not physically dial the illegal call or <u>even if a debt owner</u>

       <u>did not directly control the debt collector who did.</u>

31.    A [2]seller is liable under Section 227(b) when it has authorized a telemarketer

       to market its goods, services or collect a debt illegally.

32.    Additionally, a debt collector may be vicariously liable for a Section 227(b)

       violation under principles of apparent authority and ratification.

33.    The [F]CC 2013 Ruling further clarifies the circumstances under which a

       telemarketer has apparent authority:

              Apparent authority may be supported by evidence that
              the seller allows the outside sales entity access to
              information and systems that normally would be within
              the seller's exclusive control, including: access to
              detailed information regarding the nature and pricing of
              the seller's products and services or to the seller's
              customer information. The ability by the outside sales
              entity to enter consumer information into the seller's

---

[2] In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the
TCPA Rules, CG Docket No. 11-50, 28 FCC Rcd 6574, 6574 ¶ 1 (2013) ("FCC 2013 Ruling").

> sales or customer systems, as well as the authority to use
> the seller's trade name, trademark and service mark may
> also be relevant. It may also be persuasive that the seller
> approved, wrote or reviewed the outside entity's
> telemarketing scripts. Finally, a seller would be
> responsible under the TCPA for the unauthorized conduct
> of a third-party telemarketer that is otherwise authorized
> to market on the seller's behalf if the seller knew (or
> reasonably should have known) that the telemarketer was
> violating the TCPA on the seller's behalf and the seller
> failed to take effective steps within its power to force the
> telemarketer to cease that conduct.

..................................................................

34.    The [F]CC, 2013 Ruling, further held that, even in the absence of evidence

of a formal contractual relationship between the debt owner and the debt

collector, a debt owner is liable for collection calls if the debt collector 'has

apparent (if not actual) authority' to make the calls.

35.    'NEGI,' is personally liable for the acts alleged in this Complaint pursuant to

47 U.S.C. § 217 of the Telephone Consumer Protection Act, which reads

*inter alia:*

> *"The act, omission, or failure of any officer, agent,*
> *or other person acting for or employed by any common*
> *carrier or user, acting within the scope of his*
> *employment, shall in every case be also deemed to be the*

*act, omission, or failure of such carrier or user as well as*

*of that person." 47 U.S.C. § 217 (emphasis added).*

## IX.        **FACTS & STANDING**
### The Illegal Telemarketing Campaign at Issue

36.   At all times relevant to this Complaint an unknown debt owner, authorized,

"CREDENCE," to collect a debt on its behalf using 'CREDENCES' trade

name.

37.   The trademarks and trade-names belonging to 'CREDENCE' are widely

known due to an extravagant internet and telemarketing campaign.

38.   'CREDENCE' contacted Plaintiff by phone on numerous occasions over

the last year in an attempt to locate an inexplicable person, 'SANDY

MARTIN.' Plaintiff emphatically conveyed during each phone call received

that he does not know, nor has he ever known an individual person by the

name, 'SANDY MARTIN.'

39.   During those numerous phone calls, 'CREDENCE' or agent's purporting

to represent the interests of, "CREDENCE," had been informed that Plaintiff

demanded they stop calling him.  All efforts by Plaintiff to further prevent

'CREDENCE' from calling repeatedly fell on deaf ears.

40.   Some of the caller ID's associated with 'CREDENCE' calls were,

(973) 755-7534, (973) 679-7361, (973) 568-1360, (973) 568-4829,

(973) 568-4128, (973) 568-7349, (973) 307-9484, (973) 568-6725,

(973) 568-2614, (973) 568-3426.  Telephone numbers that are not

associated with, 'CREDENCE,' a company domiciled in the State of Texas.

41.    'CREDENCE,' somehow gained access to Plaintiffs' private information

from an unknown third party, in order to erroneously tailor its collection

effort to the wrong party being called.

42.    Other spoofed telephone numbers associated with 'CREDENCE' denoted

by, 'LEMBERG LAW' include:

(412) 566-8441, (412) 785-1043, (805) 253-7003, (805) 253-7003,

(805) 253-7073, (502) 305-2315, (844) 218-3103, (844) 475-9134,

(855) 880-4795, (210)-944-1791, (317)-854-0859, (317)-854-0961,

(408)-775-7337, (512)-428-8674, (601)-974-3582, (855)-876-5351,

(855)-876-5380, (855)-875-4065, (855)-752-9257[3];

43.    At all times relevant to this lawsuit, 'CREDENCE,' had the ability to

supervise, monitor, and control the conduct of their agents, but instead

---

[3] **Sergei Lemberg** is a consumer rights attorney, practicing since 2006.[1] He filed the first known lawsuit to involve an autonomous car crash,[2] and others.[3][4] His firm also prosecutes overtime violators,[5] food marketers,[6] as well as hundreds of cases a month against robocallers,[7][8] and automotive lemon manufacturers

consciously turned a 'blind eye' to its illegal conduct, while concomitantly

accepting the benefits of those illegal acts.

44.   At all times relevant to this lawsuit, 'CREDENCE' had the authority to issue

a "CEASE & DESIST," order to its agents and subsidiaries thereby revoking

their ability to harass the Plaintiff using, "CREDENCES" widely recognized

name.

45.   At all times relevant to this lawsuit, 'CREDENCE' had the authority to issue

a "CEASE & DESIST," order to its agents thereby revoking its authority to

collect debts on "CREDENCES" or unknown debtors behalf.

46.   At no time did 'CREDENCE' issue such a "CEASE & DESIST," order to

its agents or subsidiaries.

47.   At all times relevant to this lawsuit, 'CREDENCE' allowed its authorized

agents and subsidiaries to call Plaintiff using the 'CREDENCE' trade name

and/or trademarks belonging to, 'CREDENCE.'

48.   By allowing, 'CREDENCE, debt collectore and its subsidiaries to harass

Plaintiff using the 'CREDENCE,' trade name and by allowing debt

collectors to use its trademarks, 'CREDENCE' purposely led consumers

to believe that its agents and subsidiaries had the authority to act on the

'CREDENCE' Defendants' behalf.

49.   'CREDENCE,' and its subsidiaries, even provided its agents permission to

invoke the, 'CREDENCE,' website thereby, affirming to perspective debtors

and to unknown persons that, "CREDENCE" and its agents were, in fact,

legitimately associated with the debt collectors calling.

## X.   The Massive Scope of Illegal Telemarketing At Issue

50.   The scope of the illegal telemarketing campaign at issue in this case is

confirmed by records contained with the Federal Trade Commission Do Not

Call Registry Database and by past class action litigation addressing these

same issues:

**Jay Brodsky registration information FTC Do-Not-Call Directory:**

(a) Thank you for registering your phone number with the
National Do Not Call Registry. You successfully registered your
phone number ending in **3424** on **October 08, 2017**. Most
telemarketers will be required to stop calling you 31 days from
your registration date.
(b) Thank you for registering your phone number with the
National Do Not Call Registry. You successfully registered your
phone number ending in **1666** on **October 08, 2017**. Most
telemarketers will be required to stop calling you 31 days from
your registration date.

51.   Plaintiff at NO time provided 'Prior Express Consent' to receive autodialed,

      pre-recorded or spoofed debt collection calls from 'CREDENCE' to locate

      an inexplicable person 'SANDY MARTIN'.

52.   The scope of, 'CREDENCE,' illegal telemarketing campaign as evidenced

      by records of consumer complaints obtained in response to Freedom of

      Information Act requests:

      (a) BRIDGES v. CREDENCE RESOURCE MANAGEMENT, LLC.

      (November 13, 2015) United States District Court, N.D. California, No.

      3:15-cv-05176-JST;

      (b) PEREZ v. CREDENCE RESOURCE MANAGEMENT, LLC. (August

      24, 2016) United States District Court, C.D. California, No. 2:16-cv-06366;

      (c) FLORENCE MORRIS v. CREDENCE RESOURCE MANAGEMENT

      LLC,  USDC Southern District of California, 3:18cv132, 1/19/2018;

      (d) GOMEZ v. CREDENCE RESOURCE MANAGEMENT, LLC., Case

      No. 2:16-cv-01256 in the United States District Court for the Central District

      of California Western Division of Los Angeles;

      **BETTER BUSINESS BUREAU COMPLAINTS TCPA INCLUDE:**

      (a) 11/26/2018—Constant calls no voicemails left. These people continuously harass me daily
      with their constant calling. They never leave a voice mail either. They also reported an account to

my credit report without even sending me any proof of this so called 109 debt. Stop harassing
me!!!!

(b) **11/19/2018** — Frequent calls without any verification of debt from this company. Have
received numerous number of calls, several times a day, from this company since Oct 31st
claiming I have an outstanding debt with ATT. The calls come in from various numbers, the
person is hard to understand and does not verify the contents of the call. I have clearly expressed
to the company to first send a letter regarding the debt and I have yet to receive one. I have asked
this twice. I reported to the company once letter is received and verified, I will address the debt;
however, the company has yet to do so but continues in their onslaught of calls. During
conversation, the person will not even disclose the amount of debt owed after I verified who I
was.

(c) **11/02/2018** — I received a call from this business at 5:30 am on November first which is a huge
fdpca violation. Also prior to that I made a complaint to them about them calling back to back
receiving almost 10 call/day and they did nothing about it. I feel harassed and in danger by this
company. please help!

(d) **11/06/2018** — They have continually harassed the business (now nonexistent) about falsely
unpaid AT&T debts for years. We have paid all of our AT&T bills. Credence Resource
Management continues to call us and references a phone number that at no point was associated
with our property. I have asked for evidence of an unpaid on multiple occasions and received
nothing after providing my email. They just sent an old account statement as a PDF, but the
document is password protected. They have been able to substantiate these charges for years and
continue to harass me for money. Additionally, the business entity they are trying to collect from
no longer exists. The address they reference on the purported evidence is associated with the
business address of a former partner of the ownership group. I have been patient. I have been
kind. And at this point, it's impossible for me to continue exercising any patience with Credence
Resource Management.

(e) **10/16/2018** — Have called multiple times and I have spoken on the phone. It is a scam per the
message boards on AT&T. When I pressed them for info, they hung up. They call multiple times a
week. Not real, as we checked with vendor and do not owe anything.

**THERE ARE FAR TO MANY COMPLAINTS TO ANNOTATE AND INCLUDE IN THIS
COMPLAINT!**

53.     In June of 2016, the United States District Court for the Northern District of

        West Virginia under the "TCPA" denied a motion to dismiss filed by "Got

        Warranty Inc." as well as co-defendants N.C.W.C. and Palmer

        Administrative Services.  The defendants filed a motion to dismiss the

"TCPA" class action on the ground that the plaintiff's did not suffer concrete

harm by receiving telephone calls from the defendants who implemented the

use of an "Automatic Telephone Dialing System" (ATDS) to the plaintiffs

cellular telephones.  The court relied on *Spokeo v. Robbins*, found to the

contrary, expressly holding that, "unwanted phone calls cause concrete

harm".  The court also found "intangible harm" caused by telephone calls

that violate "TCPA," such as "invasion of privacy," wasting a consumers

time or causing risk of injury due to interruption of concentration while

driving.  In addition the drainage of a cellphone battery and the cost for

electricity to charge the battery is concrete material harm.  Therefore, a

claim of this magnitude deserves to be heard in court.

54.   A formal request to the Federal Trade Commission has been put forth by

Plaintiff for telephone records and complaint records pertaining to present

and past inquiries by consumers against, "Credence," for the violation of

"TCPA".

## XI.      THE LEGAL BASIS OF THE CLAIMS

55.   The Plaintiff's claim arises pursuant to the provisions of the TCPA, a

Federal Statute enacted to prohibit unreasonable invasions of privacy via

certain debt collection practices.

56.   There are questions of law and fact common to Plaintiff's, including but not

limited to the following:

      (a.)   Whether or not 'CREDENCE' contravened the

TCPA by engaging in acts of promulgating

unsolicited prerecorded and/or autodialed debt

collection calls to residential, business and/or

cellphone lines?

      (b.)   Whether or not 'CREDENCE' and its agents

illegally called debtors nationwide to collect debts

on behalf of unknown Doe Defendants?

      (c.)   Whether or not 'CREDENCE' agents engaged in

promulgating unsolicited ATDS debt collection

calls to Plaintiff in order to locate an unknown

person 'SANDY MARTIN?'

    (d.)   Whether or not, Plaintiff is entitled to statutory

and punitive damages as a result of the

'CREDENCE' illegal actions?

    (e.)   Whether or not an agency relationship existed

between, 'CREDENCE' and 'NIGEL' on behalf of

unknown Doe Defendants?

    (f.)   Whether or not 'CREDENCE' and 'NEGIL' had

the ability to control the collection practices of its

agents and subsidiaries?

    (g.)   Whether or not 'CREDENCE' provided its agents

with the authority to collect debts on

'CREDENCE' and unknown 'DOES' behalf?

and

    (h.)   Whether or not 'NEGIL' and unknown

'DOE' Defendants ratified, "CREDENCE," illegal

acts?

**XII.**          **CAUSES OF ACTION**

**COUNT ONE**
**VIOLATION OF THE TCPA: 47 U.S.C. § 227(b):**
**PRE-RECORDED MESSAGES**

57.    Plaintiff re-alleges and incorporates the foregoing allegations contained

in, 1 through 56, as set forth fully in this Complaint.

58.    The TCPA makes it unlawful to initiate any telephone call, to any residential

or cell phone telephone line, using an ATDS, artificial or prerecorded voice

or to deliver any message, advertisement or solicitation of any kind without

prior expressed written consent of the called party being dialed.

59.    Plaintiff alleges that the Defendants jointly engaged in an illegal

collection scheme, thereby violating of the provisions set forth within the

TCPA's prohibition against telemarketing using an ATDS.

60.    Plaintiff alleges that such violations of the TCPA were both willful and

negligent.

61.    As a result of Defendants willful actions,  Plaintiff is thereby entitled to

have his rights, status, and legal relations relating to Defendants' use of

collection via ATDS determined under the TCPA through these actions.

### COUNT TWO
### INJUNCTIVE RELIEF TO BAR FUTURE TCPA VIOLATIONS

62.   The Plaintiff re-alleges and incorporates the foregoing allegations as set

forth within, 1 through 61, of this Complaint.

63.   The TCPA expressly authorizes the Court to issue injunctive relief against

Defendants to prevent further violations of the TCPA from being inflicted

against Plaintiff.

64.   Plaintiff, respectfully petitions the Court to order that all of the Defendants,

including but not limited to their employees, agents, or other affiliates of,

"CREDENCE," to immediately CEASE & DESIST, from engaging in any

further unsolicited debt collection calls directed to Plaintiff and others

similarly situated thereby preventing further violations of the, TCPA.

65.   **WHEREFORE**, Plaintiff respectfully requests the Court to enter a

judgment for each count in his favor, thereby providing the following relief:

(a)   As to Count I, statutory damages of $500 per

violation, or up to $1,500 per violation if proven to

be willful; and punitive damages as the Court see's

fit;

(b)   As to Count II, a permanent injunction prohibiting

the 'CREDENCE, including but not limited to,

its employees, agents, or other affiliates, to

immediately CEASE and DESIST from further

engagement in all further unsolicited debt

collection calls directed to Plaintiff in violation of

the TCPA;

(c)   Enter the severest penalties possible, $10,000.00

per phone call, against 'CREDENCE' for engaging

in the illegal act of, 'SPOOFING,' as set forth in

'THE TRUTH IN CALLER ID ACT OF 2009';

and

(c)   Punitive damages as the Court determines just and

proper.

## XIV.                    **JURY DEMAND**

The Plaintiff demands a trial by jury in conjunction with the Constitution

and (FRCP) Rule 38, for all claims in front of this Court.

Case No.                          Brodsky v. Credence                    27 of 31
May 1, 2019                      Summons & Complaint

## **PLAINTIFFS AFFIRMATION**

On this 1st day of May, 2019, JAY BRODSKY, resides at, 240 East Shore

Road, Apartment 444, Great Neck, New York 11023; duly deposes' under

penalty of perjury, that the facts as stated herein are true to the best of his

knowledge.

Signed this 1st day of May, 2019 at Great Neck, New York;


_____

Jay Brodsky, Plaintiff, Self Represented

Case No.                         Brodsky v. Credence                    28 of 31
May 1, 2019                      Summons & Complaint

## PRESERVATION OF IMPORTANT INFORMATION

1.      Pursuant to Federal Rule 37(a) of the Federal rules of Civil Procedure,

        Plaintiff demands from 'CREDENCE,' and its' affiliates, subsidiaries,

        associates, collaborators, accomplices, partners, subordinates, branches,

        chapters, divisions and all other ancillary federated forces, produce and

        furnish to the undersigned JAY BRODSKY, 240 East Shore Road, Apt. 444,

        Great Neck, N.Y. 11023, all documents and/or information pertaining to an

        unknown debtor, 'SANDY MARTIN.'

2.      The circumstances or reasons such disclosure is sought or required are to

        produce evidence on behalf of the Petitioner, Jay B. Brodsky, and all or

        some of the documents referred to below are not in the possession, custody

        or control of the Petitioner and/or has been produced previously.

3.      Disclosure is being sought from 'CREDENCE' because, upon information

        and belief, 'CREDENCE' possesses information material and necessary in

        the prosecution of this action that is not reasonably available from any of the

        parties.  'CREDENCE' is required to produce at a future time and place the

        documents in its possession, custody and control.

        (a) The term "document" is intended to be comprehensive and to include,

        without limitation, all original writings of any nature whatsoever, copies and

        drafts which, by reason of notes, changes, initials, or identification marks not

        identical to the original, and all non-identical original copies thereof.  In all

        cases where original and/or non-original copies are not available,

'document' also means identical copies of original documents and copies of non-identical copies.

(b)     The term 'document' includes, but is not limited to, correspondence, electronic mail (e-mail), text messages, memoranda, contracts, leases, agreements, invoices, credit memoranda, credit files, records, data sheets, purchase orders, tabulations, reports, bills of lading, evaluations, work papers, summaries, opinions, journals, statistical records, sales reports, financial reports, checks, notes, transcriptions, telegrams, teletypes, telex messages, telefaxes, recordings go telephone calls, and other communications, including but not limited to notes, notations, memoranda and other writings of or relating to telephone conversations and conferences, minutes, and notes of transcriptions of all meetings and other communications of any type, microfiche, microfilms, dico-belts, tapes and other records, logs and any other information which is stored or carried electronically, by means of computer equipment or otherwise, and which can be retrieved in printed, graphic, or audio form.

(c) The term 'relating to' includes referring to, embodying, in connection with, commenting on, corresponding to, sharing, describing, concerning, analyzing, reflecting, or constituting.

(d) Terms in the plural include the singular and terms in the singular include the plural.

4.      A request that the party produce documents in the party's possession means that the party must produce all documents in possession of the party,

and all documents belonging to the party in the possession of the party's
representatives, agents or employee's.

5.    If any documents described in this request were, but no longer are in
'CREDENCE' possession or subject to 'CREDENCE' custody or control, or
in existence, please state whether it is missing or lost; whether it has been
destroyed; whether it has been transferred, voluntarily or involuntarily, to
others; or whether it has been disposed of otherwise.  In each instance
explain the circumstances surrounding such disposition and identify the
person directing or authorizing same, and the date thereof.  Identify each
such document by listing its author, and the authors address, type of
document (e.g., letter, memorandum, telegram, chart, or photograph), date,
subject matter, present location and custodian, and state whether the
document (or copies) are still in existence.

6.    If any document described in this request is withheld on the basis that it is
privileged, please state the factual and legal basis for the privilege asserted,
the type of document that has been withheld, the date of the document, the
general subject matter of the document, the author or creator of the
document, and the names of any persons that have had access to the
document.

7.    Pursuant to Federal Rule 26(a)(1) and Federal Rules 702, 703 and 705 of the
Federal Rules of Civil Procedure, copies of documents furnished in response
to this demand must be organized and labeled to correspond to the categories
in the request.

8.   **PLEASE TAKE FURTHER NOTICE,** that the foregoing demands are of a

continuing nature, and that should information relating thereto become

known in the future, then said information should be furnished to Plaintiff

within a reasonable time after the acquisition thereof.  If none of the above

items exist, you are to so state in a sworn reply to this demand.  Failure to

comply with the foregoing demands will serve as the basis of a motion to

preclude you upon trial of this action from offering evidence relating thereto,

whether such evidence consists of written records or oral testimony.


Signed this 1st day of May, 2019 at Great Neck, New York:


Jay Brodsky, Plaintiff, self represented